Mr. Chief Justice, and may it please the Court, in Section 924C, Congress sought to punish some of the most dangerous federal criminals, felons who used guns during crimes of violence. That includes respondents. Indeed, it is undisputed that had respondent or his co-actor remembered to take Martin They would have completed their Hobbs Act robbery and thereby committed a crime of violence. That oversight does not determine the application of Section 924C. The overlapping and elastic phrases of the Elements Clause, use, attempted use, and threatened use of force, cover the category of forced crime, completed and attempted, of which robbery is the quintessential example. Those words reach attempted Hobbs Act robbery in two independent, mutually reinforcing ways. First, as every Court of Appeals to consider the question other than the Fourth Circuit has determined, the attempted use language captures attempts to commit forced crimes, crimes that, if completed, would also satisfy the Elements Clause. Second, as to attempted Hobbs Act robbery specifically, its elements, substantial step and specific intent, necessarily entail the use, attempted use, or at least threatened use of force that is required by the law of attempt and it is borne out by the universe of real cases. The possible interpretations of the Elements Clause that could favor respondents, there are two, are each unsound, either reducing the attempted use phrase to a near nullity or drawing an incoherent distinction between different attempt crimes that can be equally violent, like attempted murder and attempted robbery. And to make his theory work, respondent would dramatically expand attempt liability. If reconnoitering a store is an attempted robbery today, then Googling a fraud scheme is attempted wire fraud tomorrow. That is not the law. This Court should reverse the decision below. If we don't agree with your reading, applying the categorical approach, in this case consistent with our jurisprudence, would it change your case if we could abandon the categorical approach? Of course, Your Honor, it would. Is there a way to apply a conduct-based approach to the Elements Clause? The government has not asked for that in this case. We would be happy, of course, to brief it should the Court request further briefing on that question. It is true that the judicial sort of chorus of complaints about the categorical approach has been growing ever louder, but we have not asked for that here in light of this Court's recent decision in Davis. One final question. I know we have to apply our jurisprudence, including the categorical approach. That's what you have to argue. But what did this respondent actually do here? Mr. Taylor participated in an attempted Hobbs Act robbery in which his co-actor shot to death the victim, Martin Sylvester. That is the crime at issue here. Well, it just seems that if you look at the actual facts and you consider your argument, there's a bit of a through-the-looking-glass feel to this case. I couldn't agree more, Justice Thomas. It's almost like angels dancing on the head of a pin here, particularly when you consider the fact that no one, not the Fourth Circuit, not any litigant, has identified any real attempted Hobbs Act robbery cases that don't involve the attempted use or threatened use of force. This is all really turning on the sort of legal imagination of the Fourth Circuit. And that is what this Court has said the categorical approach should not do. I think, you know, there is room in the case. How about the Williams case? It was an actual conviction. The Williams case is an actual conviction, but it is not, Your Honor, an attempted threat case. If there's a problem with the Williams case, as the government's brief concedes there might be, it's because it's an attempted extortion case. But that's not the way it was charged, and that's not the way it was convicted. But Your Honor, even taking the way it was charged, it is not an example of the type of case imagined by the Fourth Circuit, which is a purely non-threatening attempted threat. There's a very fine line between extortion and threat. I mean, almost nonexistent. That's why they charged it the way they did in Williams. In any rate, that concept of plausibility is, I believe that all of our cases that have applied it have done so with respect to ambiguous state statutes. Why should we apply that presumption or that way of reading things to a federal statute? We're the ones who read it and say what it is. Absolutely, Your Honor. I think the underlying principle reflected in Duane S. Alvarez is that the categorical approach should not turn on legal imagination, but rather on the real world. And I see no reason why that principle does not apply. If you have, are you saying that the following categories of cases you would not prosecute, someone is going to attempt or intend to threaten an undercover agent, gets to the spot, sits there, has a gun, will only use it if the verbal conversation turns sour, but then stops and doesn't do anything. You're going to forego threatening that person, or charging that person. I suppose, if I'm understanding correctly, the hypothetical is a potential attempt to threaten a federal official, which is a different statute with different elements. No, he's going to attempt to threaten him to take what drugs the undercover is purporting to sell. If the would-be robber reaches the point of being on the crime scene with the gun and is intercepted or sort of foiled by something beyond his control... No, because he gets there, you see him go there, you don't know exactly why he ran off, but he ran off. You're not going to prosecute him? I think, if I'm understanding, voluntary abandonment can foreclose a finding of attempt liability, and so if there's a voluntary abandonment... That's a defense. Are you going to charge him or not? It's not uniformly viewed as a defense. In fact, the federal courts view it as evidence that would undermine... Are you going to charge him or not, in those places where voluntary abandonment is a defense? I'm not aware of a place in the United States, a federal court, where voluntary abandonment is a recognized affirmative defense, but if his substantial staff reflects his specific intentions to go through with that robbery, then yes, it is an attempted Hobbs Act robbery. Ms. Tableson, is it your position on this legal imagination of the Fourth Circuit, is your position that you actually have to be able to point to a case where there's been an actual prosecution? You don't say that in your opening brief, but I think your reply brief is a little bit less clear. So I'm just wondering, do you think that the defendant has to come up with a case that actually involves the kind of facts that the Fourth Circuit posited? I think pointing to a specific case is certainly helpful and relevant evidence, and that's what the court looked to in Moncrieff and Duenas-Alvarez, the two times that the court has applied that principle. It looked to actual cases to see if those cases bear out the defendant's positive interpretation of the criminal law. Now, I'm certainly not saying that you need a case that's precisely on all fours with what the Fourth Circuit imagined, but what's really telling here is the utter absence of any cases. This crime has been charged, I mean, we're talking about thousands of prosecutions, and we're looking at zero examples. Instead, what has happened is the Fourth Circuit has excised from Section 924C a core violent federal crime based on the imaginary supposition that someone might commit it with a purely non-threatening attempted threat, and yet somehow still come to the attention of law enforcement and be prosecuted. And I would submit that that's not the way we do statutory interpretation in any context, and I think we always interpret federal statutes with a modicum of common sense and assuming that we sort of live in the world that we live in, which is what Congress presumes when it writes these laws. We don't need to pretend that we live in the movie Minority Report, in which the government can prosecute pre-crime and thought crime and benign private preparatory steps. That's not how Congress writes laws, and that's not how we interpret them, even under the categorical approach. Can I just clarify? Go ahead. I was just going to say I'm not sure who the we is that you're talking about, but I mean, how would we give any boundary line between the imagination that you're saying shouldn't be applied under the categorical approach and exactly what the theory of the approach is? You know, I'm understanding correctly, Your Honor. Your Honor, I think real cases are exactly what this court looked to in Duenas-Alvarez and Moncrieff. I suppose I don't have, you know, it doesn't have to be a certain number of real cases, but you know, some evidence that this crime in the real world, as courts have interpreted the legal doctrine, does, you know, manifest in the way envisioned by the defendant. And here, you know, this court need not articulate how many cases one needs to cross that line because we're talking about zero. What if there were a few cases, outlier cases, unusual cases, what then, how, I guess I'm asking how should we articulate the Moncrieff principle to capture what you think is the right rule here, the common sense rule? Well, I think Your Honor's question points to the one conceptual difference between this and Duenas-Alvarez, which is that here we're talking about federal law, the federal law of attempt as applied to the federal Hobbs Act statute. And so ultimately, this court is the final expositor of that law, and this court has the final say as to how the standards for attempt liability play out when applied to the Hobbs Act. And so to the extent there were, although unidentified, you know, some crimes in which the record seems to suggest something that would go beyond what this court views as appropriate attempt liability, it is within this court's power to say, well, no, actually, the law of attempt does not stretch that far. Now, I don't think there are such cases, but it is, you know, that is a feature that differentiates this from Duenas-Alvarez. Well, can a, to clarify your answers to Justice Sotomayor and to Justice Kavanaugh, is it a violation of the Hobbs Act if a person attempts to threaten but does not actually threaten? Is that an attempted violation of the Hobbs Act? I don't think there is such a thing as a non-threatening attempt to threaten under the Hobbs Act, if that makes sense. So, whatever— I'm not sure I understood that. You know, can you attempt—do you—must you—must the person actually make a threat or is it sufficient? And a threat doesn't—I mean, I think a person may threaten without having either the intention or the ability to use force. That's a different question. But is it a violation of the Hobbs Act to attempt to threaten? Not unless the conduct reaches the point of actually threatening the use of force, otherwise it will not meet the standards of substantial staff liability as applied to the elements  All right. So that's a Hobbs Act question. That's not an Armed Career Criminal Act question, correct? Correct. And that's what we have to tackle first. What is the meaning of an attempted Hobbs Act violation? Correct. I think—the government thinks there are two ways to approach this case, textually, and they're usually sort of reinforcing. The first is, as every court of appeals other than the Fourth Circuit has said, the attempted use phrase in the elements clause could simply reach all attempts to commit forced crime. The second is, as Your Honor posits, to focus on the elements of attempted Hobbs Act robbery, substantial staff, and specific intent, and analyze whether they, under the law of attempt, always entail the use—attempted use of a threat. So can we take that as a concession by the government, that there is no such thing as an attempted use—an attempted threat of force? I don't think we need to answer— If that's the government's position, maybe we could just say that and say, OK, it doesn't exist. There we are. And can we or not? I don't know. You may know. Justice Breyer, I don't think we need to answer in the abstract whether there is ever such a thing as an attempted— I'm not answering the concrete. I mean, I probably am being overly imaginative, but my experience suggests that there are quite a few cases where people might go into a bank, you know, and they're going to rob it, and they use a wooden gun, or they use something that looks like a gun, or they have something in their pocket that looks like, OK. So somebody goes and does—gives an enormous effort to get the right shape and the right kind, but it's made out of wood, you know, and he walks into the bank and just as he's about to present it to the teller and say, give me your money or your life or something, before he does, a policeman walks by. The teller turns the other way, and before the teller turns back, the policeman walks by. Goodbye. End to that. You know, that doesn't seem to me to be a comic book. I mean, it could happen, and in which case, he's attempted to threaten force but failed. I think, Your Honor, he has threatened the use of force within the meaning of Section 921. He's actually threatened it. He hasn't gotten it out of his pocket. Nobody knows it's there except for him. Who did he threaten? Oh, so, to the extent—I mean, Your Honor, whatever he has done, by hypothesis, has been threatening enough to garner an emergency— No, no. All he did was walk into the bank. He spent one month writing to Amazon to find the exact shape of the gun, though it was made out of wood, and he puts it in his pocket, and everything's set. He walks into the bank, and just as he's about to pull out the gun, because he's now right first in the queue, in walks a policeman, or the teller turns the other way. And so, forget it. Now, is that—he was attempting to use force, to threaten force. He threatened force. I don't know. That's what poses as a question. Sometimes I pose as questions things I actually don't know the answer to. I think, Your Honor, under your question, the police officer, whatever he has done— The police officer hasn't seen anything, by the way. All he sees is a man in a blue suit standing there. Well, I think in that circumstance, Ben, we're back in sort of minority report land, where the police officer can read the thoughts of the man in the blue suit standing— No, no, no. I mean, suppose that, you know, the guy goes in, and maybe he has a fake gun, maybe he just has a note saying, I have a gun, give me your money or you shoot, but he doesn't have a real gun. And some confederate of his calls the police department and says he's going to go rob a bank. And so the police department gets on its, you know, horse and apprehends him, actually before he even goes into the bank. Are you saying that there's no crime here? Your Honor, I think there may be a crime there, depending on the details. Of course there's a crime here. I think—your question— There's an attempt crime, right? It's an attempted threat. If his conduct is substantial enough that it strongly corroborates his specific intent not only to threaten—it's not a threatened simpliciter statute—but to get all the way to the point of confronting the store clerk, overcoming her will, and taking property, then yes, it is an attempted hobnax robbery. Well, that's a situation where there's an actual threat. There is indeed. I mean, it certainly does not strain the text of 924c. I mean, that's not the question. I know this may be the stuff of criminal law classes in law school, as opposed to the real world, but is there such a thing as threatening an attempt? Can you threaten to attempt? I mean, no, can you attempt to threaten? Can you attempt to threaten? Well, I thought my case was an attempt to threaten. It's an attempt, but he never actually threatened anything. But he's going to threaten. He tried to threaten. He was apprehended before he threatened. Can I clarify— So it's the same question. Is there an attempted threat? Because do you think it has to be communicated? Maybe that's what you're telling, Justice Kagan, that the teller doesn't have to hear it. It doesn't have to be communicated. I took that to be your argument. The teller certainly does not have to hear it, and there's no dispute, right, that the victim—the threat does not need to be relayed to the victim. The threat can be action, not words. The threat need not be— A man with a fake gun—the gun is made out of marshmallows, you know, and it's in his pocket, and it just looks like a gun. And he gets up close, but he doesn't take the gun out, and he doesn't do anything else. And the reason is because the teller turned the other way at the last minute, or because the policeman walked by at the last minute. You're saying that's not an attempt at a threat. I don't know. I don't know. Why isn't it? I think, Justice Breyer, a man walking into a bank with a bunch of marshmallows in his pocket, shaped like a gun, has not committed an attempted robbery. I think, Ms. Tabor, but the question here really is, are you going to sort of say, well, we're the government, we're here to tell you that we are not—never going to charge an attempted threat? We are never going to charge—there is no such thing as an attempted Hobbs Act robbery in which the overt actions in the world, Justice Barrett's question, the outward manifestations of his conduct, the things that we can see, that a jury can see, are not at least threatening the use of force, because the law of attempt, as applied to the Hobbs Act, requires that we get to that point in order to prove the defendant's specific intention to overcome his victim's will and take her property. So it's a conspiracy. He's talked with three other people, one of whom may be an undercover officer, and says, I'm going to go in, and I'm going to, you know, I'm going to shoot this person, or I'm going to threaten harm, I'm never going to shoot him because then I'll get extra time in prison if I'm caught, but we know that he's going to attempt that because he's told the other conspirators. Why—what's wrong with that? There could certainly be an attempt to threaten somebody. I think— Or one of the undercover agents stops him before he can do any harm. Mr. Chief Justice, we do not think a conspiracy is reached by the elements caused for two reasons. Okay, but I'm not saying it doesn't have to be charged as a conspiracy, it can be charged as an attempt by him to threaten the other people. That's just the evidence to support the notion that he was going to attempt. It sounds like the hypothetical you described is a conspiracy and is not an attempt. The overt action required for a conspiracy is not nearly to the same degree—is not as aggravated as the substantial step required for an attempt, and a conspiracy does not satisfy the definition of Section 924c3a. What would you call it if somebody met with the group and says, I'm going to go rob that bank? They don't have to agree, they just know it. And he gets a gun, and he gets a note that says, you know, give me all your money, and he goes in, but because somebody has alerted the police before he can do it, he's arrested. I would say he's arrested for attempting to threaten somebody. If he gets close enough to the point of consummating the robbery, then the actions that he must have committed to get to that point will threaten the use of force, and yes, he has committed. Okay, so the question—you know, then we just do the usual legal analysis. If he gets to the counter, does that count? If he gets to the door, does that count? Is that really what it turns on? Well, of course, Your Honor. Criminal liability often turns on the small details. But there must be some realm of cases, Ms. Tableson, where you're not going to be able to say that the threat was actually made, but you're going to want to have the option in your pocket of charging somebody with an attempted threat, unless you're willing to give all that away. I'm not sure that in the abstract, a pure attempted threat is something that exists. One clue to this is 18 U.S.C. 1512a, a witness tampering statute that criminalizes the witness tampering through the use or threat of force, comma, or attempts to do so, so that sounds like it would capture attempted use and attempted threats, as well as use and threats. But then the penalty provision only provides penalties for uses of force, attempted uses of force, and threatened uses of force, which reflects, I think, the common sense and textual intuition that there's no such thing as an attempted threat in the abstract that does not itself attempt the use of force or threaten the use of force. All you have to do to think of examples is just think of a case where the person is threatening force, okay? He wraps his head in a towel, that's him, and he walks in front of a shop, a boost shop, whatever it was, with something that looks like a long gun. And then he notices that the lights are out and nobody's there, so he turns around and goes home. Okay? Now you say, well, that's threatening force. So all I have to do to do the other is I just transform that long gun into a wooden gun. All right? Everything else is exactly the same. So all we have to do to create the attempted threat of force, you see, is take a case in which there's an actual attempt to use force and change the mechanism so it won't really use the force but just appear to. That's all that we've been doing. And if you want to say the government says it will never charge and it is not, we do not charge attempts to use force, and we will not because the statute doesn't cover it, and that is our view in the Department of Justice, okay, I will certainly listen to that. Two responses. First, I think I am saying that, but let me respond more substantively. The defendant in an attempted robbery, Justice Breyer, is specifically intending a confrontation with the victim whose response is by definition impossible for him to predict. So even in just a simple threat case, the victim might simply hold on to the property for a second longer and the robber has to yank it out of her hand. Stoeckling teaches us that is force, not to mention the fact that she might actually resist. So this idea of a robber who ex-ante has irrevocably disavowed any idea that there will ever be any direct physical contact during a robbery that satisfies force under Stoeckling, it is a fiction. It is a thought experiment. And it would be very strange to excise a core violent crime from the elements clause based on that thought experiment when every actual instance— I really think you have to answer the question whether there can be a conviction for attempted Hobbs Act robbery where the defendant attempts to threaten but does not actually get to the point of doing whatever it takes to make an actual threat. I really think you have to answer that question. If the answer is no, then you win this case. If the answer is yes, then I think you've got to fall back on your argument. This exists in theory, but it's not a case that exists in the real world in any substantial numbers, or maybe at all, and the application of the armed career criminal action turn on that. I really think you have to answer that. Justice Alito, I want to give you as precise an answer as I possibly can. I think the answer to your question is no, because any case that— Sorry, no what? No, we do not prosecute a pure attempted threat case, because any case that reaches the level of being an attempted Hobbs Act robbery, the conduct must threaten the use of force. And so, you know, there is—I suppose, you know, if I may continue, Mr. Chief Justice. Sure. You could describe that, I suppose, as an attempted threat, which the Fourth Circuit did. It's sort of a pithy formulation, but in practice, no, we do not prosecute, and we cannot prosecute, a pure attempted threat case that does not rise to the level of a threat. Sure. Well, I'll do it my turn. Justice Thomas. Yes, Ms. Tableson. I think the argument has pointed out exactly what my problem is. Could you just briefly tell us what the respondent was indicted for in this case and convicted of? Yes. The respondent's indictment had numerous charges, Your Honor, numerous drug trafficking charges attached to Section 924C violations, as well as conspiracy to commit Hobbs Act robbery attempts to— No, I mean the underlying facts. Oh, of course. Respondent in this case, Your Honor, was a drug dealer in the Richmond area who planned with one of his co-actors to conduct a sham drug deal in which they intended to actually steal the drug money from their, you know, putative customer. They armed themselves, went to the scene. Respondent's co-actor attempted to take the money from the customer, and a struggle ensued. Respondent's co-actor shot the victim, Martin Sylvester, fatally, and then respondent drove them away from the scene of the crime. They fled. They forgot in a panic to actually take the victim's money. And I think that point highlights a key distinction here between completed robbery and attempted robbery. Completed robbery, Stoeckling teaches, is the quintessential elements clause offense. The distinction between completed and attempted robbery is that the property is not taken. It's not that force is absent. If force is absent, it's no kind of robbery at all. It's larceny or theft or burglary. So the distinction between completed and attempted robbery is not a distinction that the elements clause cares about, which really highlights how deeply implausible it is that Congress would have written the elements clause to capture robbery, included attempt liability, but accidentally missed attempted robbery. Thank you. I just wanted to assure myself that there was no marshmallow gun involved. No, sir. Thank you. Justice Alito, anything further? Justice Sonia Wood? Counsel, I always have to put these cases in context. This is an enhancement case, correct? This defendant has been convicted of the attempted Hobbs Act robbery. He actually, because of the nature of the plea agreement, I believe he pled to conspiracy. And he was sentenced to the maximum amount on that charge in addition to... What was that maximum? I believe it's a 20-year. And in fact, your brief sounds like if we do this, we're going to let out all these horrible criminals. But most of them are facing very substantial sentences like this man. And if we invalidate this enhancement, the court could look at, will resentence and look at the mix of sentences and could even give the same sentence just using different rationale, correct? Two responses, Your Honor. First, defendants can plead only to the 924C violation. So sometimes, no, they will not have a separate conviction on which to rely. Second, the logic of respondent's argument would apply not only to Hobbs Act robbery, but to all attempted state robberies, potentially to attempted rape, which is classically defined as a crime involving force or threat to overcome the victim's will. The logic would also apply to attempted murder. This has nothing... This is just on the enhancement. This has nothing to do with the prosecution for these things. It just has to do with the enhancement. Well, Section 924C is a separate crime, Your Honor, unlike ACCA. Section 924C separately criminalizes... And the only thing at issue here is the threatened use of threat, the attempted use of threat. Well, the only thing at issue in this case is attempted Hobbs Act robbery, but the logic of this decision would naturally lend itself, naturally apply to many other predicate offenses. All right. Thank you. Okay. Justice Gorsuch? Counsel, I'd just like to return to where Justice Alito left off, just so I understand. I had not read the government's brief or heard through most of this argument a submission that the government is unable to prosecute somebody for Hobbs Act robbery based on an attempted threat that failed. I'm still, frankly, at the end of this argument, not clear about the government's representations on that score. What I had understood the government to argue is that that's just not a real-world case, or there are very few of them, and that the usual case, the generic case, involves more than that, and golly, look at this particular set of facts and how terrible it is. I'll be honest. My reaction to that argument is, boy, that sounds like the residual clause all over again to me. What do you want to say in response to that? Two responses. First, Your Honor, we're arguing both. We're arguing it's not a real case, and also that it's not a real case in large part because it is foreclosed by the law of attempt, so we cannot prosecute it. Where is the argument that it's just not ever possible as opposed to we as a matter of prosecutorial discretion, or it's just unlikely, or it's just fanciful? Where is it written that the government cannot bring such a claim? It's a combination of the requirements of attempt liability. I don't see it in your brief, counsel. It's the requirements of attempt liability. Is it in your brief? I thought so, Justice Gorsuch, but if you didn't, I apologize if it was unclear. So attempt liability requires a substantial step. I understand the substantial step argument. I do get that. But that gets back to marshmallows and wooden guns and what's enough to be a substantial step. Besides that argument, do you have anything else you want to say? Yes. We do have one other textual argument, which is the argument advanced by every other court of appeals, which is that the attempted use language captures attempted forced crime. But I also want to answer Your Honor's question about the residual clause, which I think is an important one. The analysis here differs from the residual clause analysis in two ways, and then there's an example that really helps to make this plain. First, there is no need or recourse to identify a typical or ordinary attempted Hobbs Act robbery. Instead, we're looking at the elements required by law. Second, there is no risk analysis that is divorced from the elements of the crime. So on that, if you look at James at 204 to 209, you can see a great example of how the residual clause analysis differs from this case. Yeah, let me just stop you there and say I find all that pretty unpersuasive because to the extent you're arguing that the defendant failed to cite a real world case or this isn't our practice or we're not likely to do this, that strikes me as just really arguing the residual clause all over again, and I would have thought the government would be prepared to move on past that by now. We disagree. We think that's right. That's more the nature of just a thought for you to take home and think about. Thank you. Thank you, Justice Gorthich. Mr. Kagan? I have a few questions. I haven't really moved on past Davis, but I will for purposes of this argument. So I understood you to say we will not and cannot prosecute an attempted threat. We do not, cannot, and will not prosecute an attempted threat. Is that fair? That's fair. Sorry to interrupt, and if we write that in the opinion, then it will be written down. Yes, Your Honor. And just like when I answered Justice Alito, I want to be as honest and precise as I can. What I mean is that we cannot prosecute conduct that does not at least arise to the threatened use of force. So nothing that could be purely described as an attempted threat as the Fourth Circuit envisioned it. Certainly, there can be threatening conduct that is displayed to someone other than the ultimate victim. There's no dispute that that's still a threatened use of force. And so we can prosecute crimes that don't ultimately get to the point of that confrontation with the victim, yes, but the conduct must still threaten the use of force. And then I understood your alternative argument, but I want to make sure this is correct, to be even if you could theoretically do it, which you're saying we cannot and will not do, but even if we theoretically could do it, that's a 1 in 10,000 possibility, and that's not something we should, therefore, throw out the other 9,999 attempted robbery cases, correct? That is correct, Your Honor. And if I could add, I think the existence of these potential hypothetical extreme margin cases of attempted Hobbs Act robbery are not only cautioned against relying on them by is also at the extreme margins of the elements clause actually reflects the congruence between those two statutes. It's not a reason to throw the baby out with the bathwater. It's what we would expect to find in two statutes that both turn on the concept of force. And then last question, on the sentencing provisions, Congress obviously did this and imposed this because there's a huge problem with violent crime committed with firearms and thought that the sentences were not sufficient to protect the public. That's correct, Your Honor. These are some of the most violent federal felony prosecutions that we have, that we are defending here, like Respondent's own case. Thank you. Justice Barrett? I just want to be clear about what you're conceding. So you're saying, Justice Alito is right, I think the government has to answer whether such a thing is an attempt to threaten to use force. You're saying that if someone is in the parking lot of a convenience store that they've cased out, has in their pocket a note that is going to pass to the cashier saying your money or your life, and also has a loaded gun on them, gets out of the car and starts walking towards the convenience store, and then is intercepted because maybe as the chief had posited, he's confided his plans to a confederate and so there's a way to prove intent. You're saying that the government could not prosecute that as an attempt to threaten. No, Justice Barrett. The presence of a loaded gun there is a key piece of evidence. A man intending to rob a bank or a store, walking up to the store with a loaded gun does threaten the use of force. A threat has to be communicated, right? It does. Well, it has to be not communicated in the sense of reduced to words exchange with the victim. It does not. It has to be actions or words that convey the intention to inflict harm. That's the definition of threat that this court quoted in Alanis, and that's the definition relevant here. So if I disagree with you about that definition of threat, if I think that a threat has to be something that the other person hears, you know, that's actually communicated to the potential victim, then you lose. Well, under that one, then you would not accept our, one of our arguments, yes, but I would caution against that interpretation of threat. There's no, the case law on the word threat is really uniform. It need not be conveyed directly to the recipient, to the intended recipient of the threat. That's clear under Alanis. There are numerous federal statutes that refer to threats that are not ultimately communicated to the victim. That's clear under the case law on true threats. So I don't think that there's actually much dispute between us here as to that feature of the word threat. Thank you. Justice Kagan? Just to follow up on both of these, I mean, it seems to me that what you're doing is you're sort of disclaiming something with one hand and then taking it back with the other. You're saying, oh, we won't prosecute attempted threats, but then you're saying that everything that, all these hypotheticals that sort of sound like attempted threats to the people who are making, who are posing the hypotheticals, that you can just prosecute those as threats in themselves and that you don't disclaim the ability to do that. But I think what you're hearing is that there are some threats that just haven't been consummated to the degree that they are threats. And the question is, if you accept that idea, that there are some threats that just haven't been made yet, but they're trying to make them, are you just going to leave those alone? Justice Kagan, let me try a different answer because I hear that you're unsatisfied. There is no crime that has as an element an attempted threat, right? That's just a sort of reformulation of some of the words here. The elements of attempted Hobbs Act robbery are substantial step and specific intent. And so what I am doing, and I think what Your Honor is hearing, is I am sometimes reformulating my answer in the language of substantial step and specific intent, which is what the government has to prove, and that is the criterion for our federal prosecutions under law. And so to the extent that's what I'm doing, I'm simply filtering the question through the prism of the actual law. The Fourth Circuit did say, oh, there's not an attempted threat in the elements clause, but there's no crime with an element of attempted threat. So that's simply sort of not the correct filter of analysis here. Anyone else? Thank you, counsel. Thank you. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. An attempt to commit Hobbs Act robbery is not a crime of violence under the elements clause. Under the categorical approach, what matters is the minimum conduct prohibited. Here, that is attempted threats robberies. And those robberies do not require the use, attempted use, or actual threatened use of physical force. An example proves the point. And my example is similar in form to Justice Kagan's, Justice Breyer's, and Justice Barrett's. The defendant drives to a convenience store with a note and an unloaded gun. In previous note-only robberies, he never used force. Because of unrelated police activity, he never enters the store. But he stopped on the way home and confesses to a threats-only robbery. That conduct establishes an attempt to commit robbery by threats. It involves a substantial step, and the intent is established by the facts in his own confession. It is punishable by 20 years, which is what respondent received in this case for his attempted and conspiracy to commit Hobbs Act robbery. What it does not show is an attempt to use force, the actual use of force, or a threat to use force. To get around that reality, the government distorts the meaning of use of force and threatened use of force and adopts a very unorthodox meaning of attempt liability. It argues that attempted threats are attempted uses of force, positing a meaning of use of force that contradicts this court's cases. It argues that the robber on the way to the target has already threatened force, adopting a definition of threatened that is foreign to criminal law, appears in no case, and has never been used before. The government's position does not correspond to what is left of the definition of crime of violence. It expected the Elements Clause to do all the work, but Congress did not. It enacted the Residual Clause to capture cases just like this. The Residual Clause is gone, but its demise does not expand the Elements Clause. I welcome the court's questions. Mr. Dreeben, one minor question. In your many years of experience, have you ever seen someone charged with an attempted threat, as you posit, for example, similar to your hypothetical? So, Justice Thomas, two answers on that. The government's typical approach to charging is to use the entire language of the statute. So, the Hobbs Act would be charged in Hague Verba, and it includes threats, it includes taking by force. No, I mean, I understand that, but have you, in the underlying facts, have you ever seen, even if it's covered by a Hobbs Act, have you ever seen this specific set of facts charged as a crime? It's actually fairly frequent, Justice Thomas, because many robbers do not intend to use force. They go to banks and convenience stores and other low-hanging fruit for targets for money. No, I mean specifically attempted threat. Sometimes the government cannot prove anything more. It is much easier to prove that somebody with a gun in their pocket who goes to a convenience store is attempting to threaten than it is to prove that they attempted to use force. And the government never has to prove more than the attempted threats to get a conviction. And defendants can't offer up a defense, I only intended to threaten, never wanted to hurt a fly. That's not a defense to the crime, it's a confession. And so the reported cases are fairly thin on facts that clearly demonstrate only an majority of cases that the government's prosecute typically will involve cases where we don't have to show, the government can say, that he intended to actually use force. Even if it's a sham, even if he went in just intending as a bluff threat, he's still guilty because the threat of force triggers many of the concerns that the criminal law has. It instills fear, it can lead to violence spontaneously, so we punish threats for that reason. And they have to be true threats that are communicated, I think as several members of the court have articulated today. The government posits a meaning of threats and threatened in the Hobbs Act that as far as I'm aware has never appeared in any case, any government brief, any submission, or any logical application of the meaning of this statute, section 924C3A. And there's a reason for that. When Congress drafted these elements clauses, it wanted to capture particular kinds of crimes that had particular elements. I don't know whether you finished answering Justice Thomas, but if you have, I want to jump in because I think you're confusing two separate things. You're confusing the question whether a Hobbs Act defendant must actually intend to use force. The answer to that is no. It's enough if he threatens to use force. It doesn't matter whether he has the capability of using force. If it's a fake gun, it's nevertheless a threat. That's not the question that we were discussing with Ms. Tableson. It's whether someone can be prosecuted under the Hobbs Act for attempting to threaten without actually threatening. That's a separate question. Yes. Is it not? Yes. It is a separate question. But, Justice Alito, I think all of the hypotheticals that were propounded by the court satisfy No, I understand. I understand that. They go to that separate question, not what I think you were discussing, which is the actual intent to use force. So, this is the question that I have with respect to that. Assuming, for the sake of argument, that that would fall within the Hobbs Act, since the Hobbs Act was enacted, is there any reported case involving a conviction based on that theory? So, we pointed to several cases in our brief, and the NAFD amicus brief points to others. What's the best one? Well, the Williams case that Justice Sotomayor mentioned and the Licht case that are both in our brief involve people that are essentially doing the kind of activity that the hypotheticals posit. And the government absolutely prosecutes those cases. All right. Well, let me expand it. I don't know, when did robbery emerge as a common law crime? I don't know. Hundreds of years ago. Can you point to a body of robbery cases, and this is essentially what's involved here, robbery, involving a threat, an attempt to threaten? People who were convicted of robbery where they didn't actually threaten, but they attempted to threaten. So, Justice Alito, almost every one of the attempt cases, and there are many, and most are not reported because there's no issue to appeal, involve the interdiction of crime, oftentimes because the suspect is under surveillance, as in one of the cases that's mentioned in the briefs. And the police don't want the person to actually get inside the store with what looks like a gun, so they take him down outside. It's an attempt because a substantial step has been taken. Notwithstanding what the government said, a substantial step in all the reported cases and in the model penal code involves activity that is strongly corroborative of the intent to commit a crime. So you have cases, lots of them, where people are on their way to the target, they've equipped themselves with either a real or a fake gun, they have the note in their pocket, and they're taken down before they get there. I understand the theory. I'm just asking, are there reported cases involving prosecutions based on this theory, where there was no actual threat, there was simply an attempt to threaten? Yes. I think almost all of them. Well, where are they? Well, I mentioned the two that we talked about in our briefs. Okay, Williams is a non-precedential Third Circuit opinion. All right, it's the Third Circuit, so wow. You know, it has a special place in my heart. What do you have beyond that? In the hundreds and hundreds of years of robbery prosecutions. I guess I don't understand the question just for two reasons. One is the question of what the Hobbs Act prohibits is a question of federal law. The government said that today. So it is up to this court to decide what the scope of the Hobbs Act is. Once it's identified its elements and how the crime can be committed, it lays it up against the elements clause of 924C3A, and it asks, is there a categorical match? I think also more to the point of your question, there are a large body of prosecutions that never generate any law because there is no dispute that if the facts establish the substantial step and the intent to commit the completed crime, and the crime has, as a means of committing it, threatened use of force, the defendant is guilty and the defendant is not going to go to trial or set up a pointless legal context to say all I did was attempt to threaten. Just to explain what you're saying a little bit further. Justice Alito is saying I don't see the cases. You said as a first matter you don't need to see the cases, but then as a second matter you wouldn't see the cases, but there are a ton of these cases. I guess I would like explained a little bit more why we don't see the cases. I guess there are two questions here. Why are you so sure that there are a ton of cases, and if you are so sure of that, why don't we see them in the U.S. reports? Justice Kagan, there is no reason why you ever would see them. What the government needs to do is show that the person intended to commit a robbery. Many people who go into stores, and this is anecdotal, but you can look at it on Google, you can look at it from the vantage point of the NAFD, which represents multitudes of defendants whose cases never make it up on appeal. There are people who go into stores, they want money. They don't want to hurt anybody. They often will use guns either loaded, inoperable, or fake  When the government arrests and prosecutes them, it doesn't have to appear in their mind and say, did they intend to use force. It is enough that the facts show that they intended to threaten someone. That's a different question. That's what I was talking about before. Must you intend to use force or have the capability of using it? No. No. That's clear. I understand that. The question is, are there cases where all that the defendant has done is attempted to threaten? That's a good question. If you had a client, and that client did nothing but attempt to threaten, didn't actually threaten, wouldn't you argue this doesn't constitute an attempt under the Hobbes Act or under the common law of robbery? If you had nothing else, yes, you'd make that argument, and then there would be reported cases. I'm not arguing that this isn't a theoretical possibility. Maybe it is, maybe it isn't. If this is a separate question, is this something that comes up in the real world and not just in a law school and criminal law class? Maybe that's irrelevant, but I just would like to know the answer to it. I think the answer to it, Justice Alito, is that the government's conception today of what a substantial step is is not the conception that's reflected in the decisions of the circuits or the charging practices or litigating behavior of the government. So a defendant who did all the things that these hypotheticals reflect has attempted to commit a crime, and oftentimes the only intent you can prove or the easiest intent to prove is that the defendant intended to threaten. So do defendants appeal and bring futile arguments that really there's no such thing as an attempt to threaten? I don't know why they would do that, because the Hobbes Act is incredibly clear that it prohibits robbery, as did the common law, by means of use of force or by means of fear. It's enough if the robber is successful in threatening and gets the property. And so when the person goes to the store, all of these cases that come up on appeal are sustained by the government if the evidence shows where the defendant admits an intent to threaten does not have to be proved and he does not have to admit that he intended to use force. I agree that they're distinct, Justice Alito, but the reason why these cases aren't challenged is it is not a legal defense to say I didn't intend to use force. Mr. Drubin, I'd like to pick your brain in a different direction, if I might. It's good to see you. The government this morning seems to be disclaiming what I would have thought a natural reading of the statute would suggest, that you can attempt to threaten and that that would violate the Hobbes Act. I confess I didn't quite see that in the briefs. Perhaps I missed it. I'd like you to comment on, in any event, what you think we should make of a government's concession or disclaiming of power under a plain language of a statute that it would otherwise apparently have. What weight we should give that. Number one. Number two, it seems to me that what they're trying to do, as Justice Kagan pointed out, at least in the discussion today, is to move a lot of those prosecutions that would otherwise fall under that into a broader and more capacious understanding of threats. I'd like you to comment on that, too. As to the first question, Justice Gorsuch, I think the court should give respectful attention to the government's reading of criminal statutes, but it is ultimately for this court to say what the Hobbes Act means. I don't think this is a close question on the meaning of the Hobbes Act, and I'm not sure my friends are disavowing the language of the Hobbes Act that permits prosecutions for attempts and permits prosecutions for robberies by threat. You put the two of them together, and I'm fairly confident that Ms. Tableson would say, yes, that statute means what it says. You can prosecute attempted robberies by threats. If the government is disavowing that, I think this court should exercise its power to construe federal law and to read the statute as it's written. As to the second question, the meaning of threats, here is where I think the government's argument is both out of sync with the rest of criminal law and holds the potential to do some considerable damage in expanding liability in ways where it has never gone. The meaning of threat in criminal law is fairly well established. It's a communicated expression of an intent to do harm. Justice Thomas's separate opinion in Alanis used that definition. Justice Alito's definition was fairly similar, adding in to a reasonable person, would appear as a serious expression, and the court quoted without disagreement dictionary definitions that were proffered by both the defendant and the government. They all involve the essential thing here of communication. What the government has said is that threatened, apparently alone in Section 924C3A, although I think its rationale would extend to all the elements clause, means something other than a communicated intent. The government is shifting over to a definition of intent that we use in the real world sometimes, like the threat of bankruptcy. It's a risk that may materialize, but it is not the definition of threatened that you would expect to see in a statute that's trying to describe real world criminal offenses involving threats. Those all involve communication. As I understood the government, they would say, well, it has to be communicated to someone, but not necessarily the victims. What's your thought on that? Agree. It does, but it has to be communicated. And what the government is doing is saying, the guy on the way to the store who actually wants to be rather secretive and doesn't want people to know that he's on his way to a store to rob it, has somehow communicated to an omniscient, objective observer, aware of all the facts, conduct that is threatening. I'm sorry to interrupt, but just to finish this up and then I'll be done. I think the government would respond, well, we had an informant who alerted a police officer and surely the police officer would have felt threatened. I think if you add in the informant to whom information was communicated, you get into some nice questions about whether co-conspirators speaking with each other could generate the kind of communication that we think of as a threat. But the government's position is not that. The government's position is anyone just driving on their way, if they are a threat because they intend to go in with a gun, that is threatened. It's a noncommunicative use of threat. It's not the one that is found in the criminal law. On Justice Gorsuch's first question about the government's representation, I take you to be saying that we should upend hundreds if not thousands of convictions against violent criminals who committed violent crimes with firearms because we shouldn't accept the government's representation that it cannot, will not, and does not prosecute attempted threats. And I'm trying to figure out how that makes any sense. Well, Justice Kavanaugh, they can say what they will do. Although, in my experience, representations at the podium here do not radiate back to the 1930s. So we shouldn't believe them? We shouldn't believe this will be communicated? That's the basis for throwing out thousands of convictions? No. I think that the reason why the court should accept the Fourth Circuit's reading and our position is that it is legally correct. And the court should decide for itself what the Hobbs Act means and what attempt liability entails and then apply the Elements Clause. And, Justice Kavanaugh, if I could respond, I think, to the underlying impulse, the concern that this is upending congressional intent. When Congress originally enacted all the definitions of the crime of violence, here in ACCA, in Section 16, it paired the Elements Clause with a broad residual clause. And it did that for a reason. It knew that not all the crimes and the conduct that it wanted to reach would be comprehended by solely looking at elements under a formal categorical approach, which is what this court has always used. When this court invalidated the residual clause first in Johnson, then in DiMaia, finally in Davis, it took away that backstop. But as Justice Thomas said in his recent separate opinion, I believe, in Borden, it doesn't change the scope of the Elements Clause. Well, I agree with that. But I think there's a mistaken impression that you're creating there. You're not intending it, but which is if it's covered by the residual clause, the old residual clause, then it couldn't have also been covered by the Elements Clause. And I think that's a misreading, I think, of how the two clauses fit together. I think there was overlap between the two clauses. Yeah, I agree with that. And there are a handful of cases where you see courts applying both to the same crime. It is fairly notable that the government has totally given up on conspiracy as a predicate crime that satisfies the Elements Clause, even though, as I understood Ms. Tableson's argument, I don't see why the government couldn't argue that when a lot of conspirators get together and agree to commit a crime, that's a threatened use of violence right then and there. But the government doesn't go that far. It's abandoned conspiracy. And the ultimate reading of the Elements Clause remains something that the court should do under its own power. Even before the residual clause was gone, the government was prosecuting cases like this, but it did it by saying attempted robberies fit within the residual clause on several occasions. Well, that was just very easy, right? So it was easy to fit it under the residual clause. Once that's gone, then it's a tougher question. That's why we're here. But I don't think that means just because they used to charge them under the easy approach, they couldn't have also charged them under the Elements Clause. I mean, I think we're agreeing on that. We do. And I think it's important to look at the language of the Elements Clause. That's typically the way the court has tried to match up the elements of an offense with the Elements Clause. The government said here today something that I don't really think it said very clearly in its brief, which is that the attempted use part of the definition of the crime of violence somehow carries over and captures all attempt crimes, all attempts that could be prosecuted under underlying statutes. That isn't the way that Congress worded the crime of violence definition. It's use, attempted use, comma, or threatened use of physical force against another. The attempted piece modifies use. It doesn't modify threatened. And Congress had ample models before it and could amend the statute tomorrow if it wanted to capture all attempts to commit crimes of violence. S-52, which was the original progenitor of the Armed Career Criminal Act, covered robbery and burglary and attempts and conspiracies to commit those offenses. That would have been a perfectly natural way to pick up all attempts. The sentencing guidelines do it that way. The three strikes provision does it that way. And it could easily be mapped onto the language here, but that's not what Congress wrote. Can I ask a different question, which is suppose that there is a theoretical possibility and that we don't accept the government's representation and that there are a couple of cases or a few cases that you reference. I think their other argument rests on Moncrief and Duenas-Alvarez, that we shouldn't do what you're suggesting based on just a few outlier cases. Just wanted you to respond to that argument. So, Jessica, if I could unpack this a little bit, because I essentially agree with what Justice Sotomayor said. Those were cases involving state crimes that had certain ambiguities, and what the court was essentially saying was, you, the defendant, have come up with a very unorthodox application of a very typical offense, aiding and abetting, and you're extending it far beyond where other courts do. We're not California, the court could say. We need to know whether California construes its law that way, and to prove it to us, show us some cases where there are prosecutions like that. The court has not extended that approach when the language on its face is clear. The government cites Moncrief, but I'm a little puzzled by that citation, because the holding of Moncrief was a Georgia-controlled substances act was not categorically a match for a federal drug definition because the Georgia statute didn't have an exception for social sharing of marijuana without remuneration. The federal law did. And the court did not look to see whether there were any cases in which Georgia actually had prosecuted social sharing of marijuana. It went with the plain language. So here you have both elements. You have a federal statute that it's up to this court to construe, and its plain language covers attempted threats. And you have the fact that the language is clear. Well, the analogy to California, though, I think, doesn't that fit this case as well? I guess I'm not understanding the federal state. When the government says, actually, we do not and will not extend the statute that far, isn't that the same as saying, well, we don't have any evidence that California would extend it that far? I mean, it seems similar. I think it's quite different because the question for the court in Duenas-Alvarez was, what does California law mean? When the court asks the question, what does federal law mean, it doesn't need the government to tell it what federal law means. It says what federal law means because this court is the ultimate expositor of federal law, and it does that by looking clearly at the statute. And the other distinction of Duenas-Alvarez was the defendant offered something that the court thought was rather implausible, that aiding and abetting in California reached the circumstance of you shared a drink with a young person, and then later on the young person went out and drove and caused an accident. The court didn't buy that that was a natural aiding and abetting violation, and it said, show me. If we accept the government's representation and agree with it, so we are now saying that as a matter of federal law, do you lose then? Yes, I think if you were to say that there is no such thing as attempted threats under the Hobbs Act, that's not consistent with our theory. But I do not understand how the government could say that attempted threats are not a violation of the Hobbs Act for the reasons that we've already discussed. The Hobbs Act has multiple means of committing robbery, force, fear, threatened use of violence. And the distinction between using force and threatening force is embedded in robbery statutes across the country. So all you need to do is tie to that the attempt liability standards. And the only way the government gets out of that, I think as members of the court have pointed out, is by adopting very eccentric definitions of threat that do not involve communication and very eccentric definitions of use of force, which do not involve the application of force. This court in Leocal and again in Voisin said use of force against the person of another involves the application of force. You can't back it up and say that the threat of force is itself the use of force. So I think the problem for the government's case here is that the categorical approach focuses on elements. It's not about real world cases. It's about what the statutes mean. It focuses on the minimum conduct required to violate the underlying statute and then comparing it to the elements clause and then asking is there a match. And here there is not a match and it's for that reason why this case falls outside the elements clause. And if I can make one more comment in response to some of the questions that Justice Thomas was asking. The government here charged seven different counts. It charged several counts that involved drug trafficking and use of a firearm during and in relation to a drug trafficking offense. Had it accepted a guilty plea to those, it could have had its 924C. The fact that it decided to go with the attempted or conspiracy to commit a Hobbs Act robbery as the predicate offense for 924C and still got a 20-year sentence on the underlying Hobbs Act offense is no reason for this court to depart from the categorical approach to interpret the elements analysis as anything but based on elements or to distort the meaning of federal criminal law in ways that will have broad and unpredictable ramifications for threat statutes, attempt liability and a host of other applications. Thank you, Mr. Grieve. And this discussion actually reminded me of a scene in a Woody Allen movie. I don't remember which one it was, but you might, where the robber walks into the bank, hands a note to the teller and the teller reads it and says, give me the money, I have a gun. And the robber says, no, it's done, I have a gun. And she says, no, that's definitely a B. And then he goes and asks the teller next to her, is this a B or an N? And she says, that's a B. And I think the guy just leaves. I mean, how do you analyze that? That would actually be a substantive violation of the Hobbs Act to take the money and run. Is that what it was? Yes, it would, because there would have been a threatened use of force. Now, it probably would be an attempt if he walked out without the money. But that would be, if he made the threat and got money, it would be a crime. If he makes the threat and he doesn't get money because they can't read the note, it could be prosecuted as an attempt. But not all Hobbs Act attempts involve the actual communication of the threat. I think that's our central point. But it's an attempted threat. Correct. Well, it's an attempted Hobbs Act robbery by means of threat. He made what he thought was a threat. He communicated something that was an intention, could be understood as a threat of harm. It wasn't understood by the teller, but you don't have to have success in order to have criminal liability. An attempt that fails is still prosecutable as an attempt. So, yes, I think it would be covered. Justice Combs? Thank you, Mr. Chief Justice. Mr. Dreeben, you said that the categorical approach was not about the real world. And that is actually part of my problem, that much of our discussion here was not about this case, the facts in this case. How would your case change or the analysis in your case change if the categorical approach did not exist? I know there's some complication because this is the elements clause and not the residual clause. But how would it change? Well, then the government would need to show in a circumstance-specific way that a crime involved threatened use or actual use of force. And this case would probably come out the other way. The reason why I think the government has never challenged or even argued that the elements clause doesn't involve a non-categorical approach is because of the word elements and because of a sequence of decisions of this court going back to Leocal and extending on and on that say that it does focus not on real world facts. The court said that very clearly most recently in United States v. Davis. It said it earlier in Mathis. And I think Mathis is perhaps a good answer to some of the concerns that have been raised. There you have an Iowa burglary statute that covers not only dwellings but also vehicles. And vehicles are not part of generic burglary. The object has to be a house. And so the court said in Mathis none of those burglaries under Iowa law count because the statute is overbroad. Now I suspect that there are very few burglaries prosecuted and convicted in Iowa that involve boats as their target. Most of them, if not all of them, are going to involve houses and buildings. And yet the categorical approach is intentionally overbroad. And Congress had no reason to worry about that when it passed the elements clause because the residual clause was a backstop. That is the source of the reason why the court has concerns today about whether the elements clause is not broad enough. You said that when you were on the other side too, didn't you? I would have made the arguments that I thought the United States should make. Mr. Dreeben, it's always good to hear you argue. I would have thought when you left the Solicitor General's office you would never want to have anything more to do with an arms career criminal act case. But maybe it's more congenial on the other side of these cases. Well, this case is actually under 924C. And I think another notable thing that the court should just have in mind on the scope of these statutes is that the Hobbs Act itself prohibits robbery through the threat of force against persons or property. The Armed Career Criminal Act enhancement does not include under the elements clause threats against property. So already the Hobbs Act has fallen out of ACCA, and the nation and criminal justice seem to have survived just fine. I'm a bit confused, possibly because of the government, and so I'm going to ask you to clarify it if you can for me. What is it that you think the government thinks is the unusual situation, the one that they wouldn't charge? So as I understand the government's position, the government sees the substantial step requirement as so rigorous that any defendant who could be charged with an attempted Hobbs Act robbery has already reached the point of engaging in the threatened use of force. And the two flaws that I think exist in that argument are that first, the substantial step can be far more capacious than what I think the government has been telling us today. And if you look around the circuits at case law, you find plenty of cases that are a little bit more generous to the government than what they seem to be saying today. And the second piece of the government's argument, and it's indispensable, is that if it hasn't reached that point, then you don't have the threatened use of force at all. And I'm sure Ms. Tableson will correct me if I'm wrong. She will, but I thought it was that she's saying someone doesn't intend to have a gun, doesn't have a gun, they just have a note that says I'm going to threaten you, but I really don't have anything to carry it through on me or whatever. If they catch them at the door of the bank, they're not going to charge them? I'm pretty sure that that is not the government's intent. I think the government would say I'm going to charge them. Well, the government frequently does charge people like that because it's safer to take them down before they get inside if they're under surveillance. But I think what Ms. Tableson would say, just to be fair to what the government's argument is, is that already is a threatened use of force, even if nothing has been communicated. And nothing's done other than the planning, writing the note, casing the bank, going to the bank, opening the door. That's enough for them. That's a threat to threaten. But this is in part answers to some of the questions that Justice Kavanaugh was asking. If the court did reject the government's unusual version of threatened use of force that doesn't involve any communication, then they are putting themselves out of the box for prosecuting those kinds of interdictions. And I think that that is something that would have high costs prospectively in law enforcement. Thank you. Justice Kagan? I'm just thinking about what this set of cases are that are the attempted threats or the attempted robbery by threat. And Justice Kavanaugh referred to them as a few or a couple of cases, and that might be with respect to reported cases. But what I take you to be saying, and I just want to make sure that I understand this, is that every time somebody is apprehended in the parking lot, before he gets to the cashier, before he gets to the teller, and the government apprehends that person and then negotiates a plea with that person, because that's what happens in most of these cases, that the government is relying on the fact that it doesn't have to show an attempt to actually use force. That all it has to show, and the culprit knows this and the government knows this, all it has to show is an attempt to threaten force because of the fake gun or the note in the pocket or anything else that might convey such an intent. And that it's irrelevant whether the person intends to use force. The government knows it doesn't need to show that, and so too the culprit doesn't need to show that. And the chances for a plea are, you know, increased. So we might have a few reported cases, but in all cases where the government apprehends somebody, am I wrong about this? In all cases where the government apprehends somebody, before they actually get to the point of the teller or the cashier, the government is relying and the government gets what it wants because it only needs to show an attempted threat. 100% correct. And I think backing up that insight is that showing intent to threaten is very easy on these facts. Showing intent to actually use force can be quite difficult. The government doesn't need to show that to get a conviction, and so there's no reason why the facts are ever developed that would differentiate between those two intents. And one real world fact that backs up that a lot of robbers probably don't intend to use force is that in 80% of the sentenced Hobbs Act robbery cases, which involve both attempts and completed offenses, under the sentencing guidelines, the defendants do not get an enhancement for causing bodily injury, which suggests that in four out of five robberies, no one gets hurt. And that accords with the reality that a lot of robbers have the intent to threaten. They do not necessarily have the intent to use force. Justice Gorsuch? Thank you, counsel. Rebuttal, Ms. Tableson? Thank you, Mr. Chief Justice. I have three points to make. First, to help to clarify some of the confusion. I think it's important to differentiate here. The words threatened force appear in both the Hobbs Act and in Section 924C3A. Those words standing alone have the same meaning in both statutes, actions or words that objectively manifest or convey the intention to inflict harm. Now, the Hobbs Act, in defining robbery, also adds other elements to the crime, right? So you can see this in the text. It has to be from the person or in the presence of another against his will and to take property. That means that a Hobbs Act robbery sort of adds those extra requirements on top of the basic definition of threat. 924C3A, of course, does not. It simply refers to a threatened use of force by itself. And that makes sense because 924C3A, that language does not create the actus reus of any new crime. Instead, it is written to cover a category of other crimes. That category includes completed Hobbs Act robbery, which will have a threat that meets all those other definitions requirements too, but also crimes that do not have all those other requirements met, such as sometimes attempted Hobbs Act robbery. So to be clear about the government's position here, as a matter of law and as a matter of sort of practice and the laws of physics, we cannot prosecute what we're calling attempted threat cases under the Hobbs Act for actions that do not at least threaten the use of force as that phrase is used in 924C3A. That is what I mean to say, and to the extent I created confusion on that, I'm sorry. Second, as to the records reflecting prosecutions for non-threatening conduct, first, contrary to my friend, there is every incentive for a defendant to argue that he did not commit a substantial step sufficient to constitute an attempted Hobbs Act robbery. At the very least, there is always an incentive at sentencing for a defendant to make a record of the fact that his crime involved only benign preparatory steps and that he never under any circumstances would even have yanked property from his victim's hand had she resisted for a moment. That is clear in the records of actual criminal convictions, and not even the brief cited by the federal defenders cite such a case despite the fact that they represent these clients. As to Moncrief on this point, my friend ignores the critical section of Moncrief that applied the Duane S. Alvarez principle to evaluate a state statute that did, unlike the Hobbs Act here, have a facial mismatch with the relevant generic federal statute. So the state statute posited was a firearm statute that lacked an exception for antique guns, and it was being compared to a federal statute that had an exception for antique guns. And Moncrief applied the Duane S. Alvarez principle in noting that there would not be a categorical mismatch if, in fact, there were no actual state prosecutions under that firearms offense for crimes involving antique guns. Third, I want to briefly touch on the potential interpretations of Section 924C3A that could actually support Respondent here. There are two, and they are both unfound. First, Respondent could interpret the phrase attempted use of force as applying only when the listed statutory elements of the crime include the unsuccessful application of direct physical force, like shooting and missing, or trying to shoot and having your gun jam. That would reach almost a null set of crimes. Respondent identified two in Fourth Circuit briefing, but the language of those two statutes, and it's one subsection of an aggravated assault statute and one subsection of a witness tampering statute, that language was not in effect in the 1980s when the Elements Clause was drafted. So we're talking about a null set. That cannot be right. This Court has repeatedly declined to interpret categorical language that reaches a category of crime to reach nothing. Second, the Fourth Circuit's approach, slightly broader reading, recognized that the phrase attempted use is a sort of term of art that captures some attempt crimes, like attempted murder, even if the substantial step does not reach the point of swinging and missing or shooting and missing. But it limited the phrase to exclude attempts to commit crimes that can be completed with a threat of force. The problem is there's no crime that has as an element the attempted threat. Instead, the elements that we have to look at under the categorical approach are substantial step and specific intent. And when we compare the substantial step that could support an attempted murder conviction to the substantial step that could support an attempted robbery conviction, we see that they can be equally violent. So a hired hitman sitting outside the victim's house with a gun, if I could just finish my sentence, Your Honor, thank you, sitting outside the victim's house with a gun compared to an armed robber about to enter the store with a gun. That conduct must rise and fall together categorically. Is there no further questions, Your Honor? Thank you, Counsel. The case is submitted.